## A95A2196. NATIONAL FOUNDATION COMPANY v. POST, BUCKLEY, SCHUH & JERNIGAN, INC. et al.

### (465 SE2d 726)

BIRDSONG, Presiding Judge.

Appellant National Foundation Company d/b/a Nicholson Construction Company (construction company) filed notice of appeal solely from the order of the trial court granting summary judgment to appellees Post, Buckley, Schuh & Jernigan, Inc. et al.

On June 25, 1990, John Wesley Murphy, a carpenter employed by the general contractor, E. R. Snell Contractor, Inc., fell from an unguarded walkway along a shoring wall at the Peachtree Road bridge-Georgia 400 construction project (project); as a result, he was rendered a brain-damaged quadriplegic. The shoring wall was part of a construction project designed by appellee Post, Buckley, Schuh & Jernigan, a professional engineering firm, under contract with the Georgia Department of Transportation. Appellees Stephen Hale, project manager, and Joseph McGrew, bridge designer, were professional engineers employed by appellee engineering firm.

On November 17, 1992, Kimber Fortner, legal guardian of Murphy, sued appellees and appellant construction company averring professional malpractice in the design, preparation and subsequent shop drawings for the shoring wall, and that appellant construction company was negligent in maintaining a safe work area. Appellant served as both the designer of the shoring wall and as the supervising contractor for its construction. The OCGA § 9-11-9.1 expert affidavit recites that appellee Hale was the engineer of record, certain of the drawings relating to the project were made by appellee McGrew, and the project plans were prepared by appellee engineering firm for whom Hale and McGrew acted as agents in designing, preparing and approving construction drawings for the project. The affidavit also recites that the details of the shoring wall from which Murphy fell were prepared in the form of shop drawings by an engineer-employee of appellant construction company as part of, and in implementation of, the overall project design prepared by appellee engineering firm. These shop drawings were submitted to appellee engineering firm and were reviewed and approved by their agent McGrew. The expert's affidavit concluded that appellee engineering firm and its agents were negligent as follows: failing to design and show on the drawings a protective barrier or handrail for the top of the shoring wall; failing to provide for barriers at each end of the shoring wall to keep workers from the top of the wall; and failing when reviewing the shop drawings prepared by appellant construction company to require protective barriers or handrails on the top of the wall or barriers at each end thereof to keep workers from the wall top. The expert's subsequent deposition testimony was not inconsistent with his affidavit. Appellee

engineering company submitted inter alia affidavits from McGrew and Hale in which they stated they were not negligent in connection with their design of the project or with the review of the shop drawings. They also claimed no responsibility or obligation to design barricades or handrails for the shoring wall, and that their review of appellant's shop drawings did not require them to check for safety items such as barricades or handrails.

The trial court granted summary judgment to appellees and denied summary judgment to appellant. Thereafter, appellant and another defendant settled the case with plaintiff. As a material part of this settlement plaintiff, with consent of the trial court, dismissed its suit with prejudice after having executed a broad release of appellant and all persons and legal entities listed expressly by name in the release and settlement agreement document. Both appellant and appellees were among those entities expressly listed by name in the release and settlement agreement. Thereafter, appellant filed notice of appeal from the grant of summary judgment to appellees. See generally *Shackelford v. Green*, 180 Ga. App. 617, 618-619 (349 SE2d 781), aff'd 257 Ga. 9 (356 SE2d 27).

Appellant asserts the trial court erred in concluding there were no genuine issues of material fact presented by the evidence, and that appellees were not entitled to summary judgment; appellees contend inter alia that this appeal should be dismissed. *Held*:

1. "Direct appeals from orders granting partial or complete summary judgment may be taken either within 30 days of rendition of the judgment or after the rendition of the final judgment in the case." *Studdard v. Satcher &c., Inc.*, 217 Ga. App. 1, 2 (456 SE2d 71). Notice of appeal was filed within 30 days of plaintiff's voluntary dismissal of this suit with prejudice.

As a general rule, voluntary dismissal with prejudice (particularly when entered with trial court approval) of an entire suit constitutes a form of "final judgment" under the appellate practice act. *Marchman & Sons v. Nelson*, 251 Ga. 475 (306 SE2d 290); cf. *Fowler v. Vineyard*, 261 Ga. 454 (2) (405 SE2d 678) (voluntary dismissal with prejudice constitutes judgment on the merits for purposes of res judicata). As "the right of contribution arises out of, but exists separately from," the rights present in an underlying suit ex delicto involving joint tortfeasors, "dismissal with prejudice of the underlying suit is not a bar to an action for contribution by one joint tortfeasor against another joint tortfeasor." *Marchman*, supra at 477, 478.

Appellee engineering firm asserts, however, that because appellant secured the dismissal of all parties, including itself, from the case, no case or issue remains to be appealed. Appellant contends it is entitled to appeal the grant of summary judgment to the co-defendant, appellee engineering firm, based on the holding of this Court in

*Shackelford*, supra. In *Shackelford* at 618, it was opined that "[s]tatus as a losing party has been statutorily conferred upon a co-defendant who[, as in this case,] is being sued in the capacity of a joint tort-feasor and who wishes to appeal the grant of summary judgment in favor of one or more of his other co-defendants." A co-defendant in a tort action, as a general rule, is deemed to have standing to appeal the grant of summary judgment to another co-defendant against whom he asserts a right of contribution. See *Shackelford*, supra; compare *Hussey &c. v. Ga. Ports Auth.*, 204 Ga. App. 504, 507 (4) (420 SE2d 50). Thus, the standing requirement has been relaxed in situations "in which the co-defendants are being sued as joint tortfeasors." *C. W. Matthews Contracting Co. v. Studard*, 201 Ga. App. 741, 742 (2) (412 SE2d 539).

Appellees, citing inter alia *Satcher &c., Inc.*, supra; *Mitchell v. Wyatt*, 192 Ga. App. 127 (1) (384 SE2d 227) and *United States Fire Ins. Co. v. Farris*, 146 Ga. App. 177 (245 SE2d 868), assert that a party cannot appeal from a voluntary dismissal which it has caused to be procured. Appellant aptly counters that it is appealing from the grant of summary judgment and not from either the order of the court authorizing voluntary dismissal of the suit or the voluntary dismissal thereof. The order granting summary judgment was, by virtue of statute (OCGA § 9-11-56 (h)), an appealable order; it is from this order appellant has timely filed this appeal. And appellant, as an alleged joint tortfeasor, is deemed to have appellate status as a "losing party." *Shackelford*, supra. We decline to dismiss this appeal.

2. Applying the summary judgment standards of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474), we conclude that the trial court did not err in granting summary judgment to appellees.

In malpractice cases, the breach of duty — that is, the element of failure of the professional to exercise ordinary care, skill, and diligence — must relate directly to the duty of the professional to perform the task for which he was employed. *Tante v. Herring*, 264 Ga. 694, 695 (1) (453 SE2d 686). A legal duty can arise either by operation of law or by contract. *Armor Elevator Co. v. Hinton*, 213 Ga. App. 27, 30 (443 SE2d 670). What duty a defendant owes to a plaintiff is a question of legal policy to be decided as an issue of law. *Meinken v. Piedmont Hosp.*, 216 Ga. App. 252, 253 (454 SE2d 147).

Mere occurrence of an unfortunate event is not sufficient to authorize an inference of negligence. *Robertson v. MARTA*, 199 Ga. App. 681, 682 (405 SE2d 745). Appellant's expert opined inter alia that appellee engineering firm breached its professional duty (a) when it designed a shoring wall with a 30-foot drop in a working area without providing for barricades to keep people off the wall or a guardrail to prevent persons from falling off the wall and (b) in failing to review the contractor's shop drawings so as to require the construction of

such barricades and/or guardrail.

Appellant relies substantially on the holding of this Court in *Samuelson v. Lord &c., Inc.*, 205 Ga. App. 568 (423 SE2d 268). In *Samuelson* at 572, it was held that independently of the architect or engineering contract, an architect or engineer owes a general duty to use reasonable care not to harm third persons who, it is reasonably foreseeable, might be harmed by a negligent architectural design. It was further held that a duty to create a walkway for third-party pedestrians also may be created by ordinance or "by an accepted industry standard for a particular type of development." Id. at 573. However the court, after noting that plaintiff's expert affidavits alleged defendant's failure to provide a way to permit continuous pedestrian traffic was a "failure to follow generally accepted practices of the architectural and engineering professions," observed that "[u]pon a motion for summary judgment defendants may be able to establish that the applicable ordinances and industry standards for the premises at issue in this case do not require a way for pedestrian traffic across the property." Id. Thus, the court concluded that it was premature to dismiss the complaint or to grant judgment to the defendants on the pleadings. *Samuelson* is distinguishable as it involved neither injury sustained by an employee of a contractor or subcontractor at the work site nor the grant of a motion for summary judgment.

We conclude as a matter of law that, under the attendant circumstances, appellees had no such legal duty toward appellant. The design and placement of handrails or barricades of a temporary nature in a work site area is primarily a safety measure rather than an inherent design requirement of the structure of the shoring wall. The duty for workers' safety rested upon those contractors who exercised worker control and supervisory responsibility on the job site; appellees contractually exercised no such control or supervisory responsibility. Although not directly in point, under the attendant circumstances, we find the results of *Henry Roy Portwood, Inc. v. Smith*, 207 Ga. App. 748 (429 SE2d 143) and *Yow v. Hussey &c. Intl.*, 201 Ga. App. 857 (412 SE2d 565) persuasive in determining whether, as a matter of legal policy, appellee engineering firm owed a duty to include temporary safety features in its design of the shoring wall or in its review of the contractor's shop drawing. In *Frampton v. Dauphin Distrib. Svcs. Co.*, 648 A2d 326, 329 (SC Penn.), the court opined: "The architect . . . had not been hired to supervise the construction work and had no contractual obligation to oversee the manner in which the several contractors and their employees performed their work. . . . Absent a greater duty imposed by contract or course of conduct, an architect's liability is limited to instances of unsafe or defective design of a structure. An architect, in the absence of a duty

specially imposed by contract or course of conduct, has *no duty* to take affirmative action to protect workers from hazards on the job site which are either known or[, as in this case,] readily visible." (Emphasis supplied.) Compare *Block v. Lohan Assoc.*, 645 NE2d 207, 222-224 (Ill. App.); *Waggoner v. W & W Steel Co.*, 657 P2d 147 (SC Okla.) and *Kaltenbrun v. City of Port Washington*, 457 NW2d 527 (CA Wisc.). We further find this same principle equally applies to appellee engineering firm and its agents and employees as well as to architects, and also applies in professional malpractice cases as well as negligence cases. We recognize there exists no direct precedent for our holding. However, "[t]here can not be a precise precedent for everything. Where[, as in this case,] there is a clearly established principle, the lack of a precedent is no obstacle. There must some time be a first precedent." *Crosby v. Potts*, 8 Ga. App. 463, 466 (69 SE 582).

Additionally, in determining the scope of appellees' duty, as an issue of legal policy (*Meinken*, supra), we agree with the appellees that adoption of appellant's position would generate an intolerable legal burden on the design community in this state, and could result in a blizzard of design litigation generated through a battle of experts. This in effect would remove the issue of legal duty from the breast of the court and vest it within the waiting grasp of the retained expert. Though appellant's arguments in this regard are enticing, "[w]e cannot succumb to this siren's call." *Perryman v. Rosenbaum*, 205 Ga. App. 784, 788 (423 SE2d 673).

*Judgment affirmed. Johnson and Smith, JJ., concur.*

DECIDED DECEMBER 11, 1995.

*Pursley, Howell, Lowery & Meeks, John R. Lowery, Susan S. Jones,* for appellant.

*Sutherland, Asbill & Brennan, William R. Wildman, Charles T. Lester, Jr.,* for appellees.

